SIMOS, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–297–CR. Submitted on briefs April 6, 1978.—
Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 278.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magree-Heilprin,* assistant attorney general.

CONNOR T. HANSEN, J. The issue presented on review is whether the trial court erred in admitting the lineup and in-court identifications of the defendant.

The seventy-two year old victim, Mrs. Pearl Gappa, testified that on the evening of December 11, 1973, she observed a man, whom she recognized as having repaired her chimney a few months earlier, on the front porch of her house indicating that he was going around to the back door. As she unlocked the back door, he came in, grabbed her arm, dragged her through the kitchen and living room and into the bedroom, and robbed her. While the defendant was committing the offense, she told him she recognized him. Upon her refusal to give him money, he hit her about the face, searched her room and took a roll of dimes, leaving her unconscious.

Mrs. Gappa maintained at all times that the man who robbed her was the man who did the chimney work for her. However, during the police investigation she

was shown three separate arrays of photographs, each including a picture of the defendant. She was unable to positively identify the defendant from the photographs. During her view of the third array, which contained the most recent photograph of the defendant, she picked up his picture and said the robber was "[l]ike this, but darker. Not like he's colored, but darker, I mean," whereupon the detective told her the man in the picture was her "chimney man." The trial court properly denied the admission of the photographic identification on the grounds that it was unnecessarily suggestive.

After the incidents relating to the attempted photographic identifications and eight days after the offense had been committed, the defendant was arrested. On the day of his arrest, Mrs. Gappa identified the defendant in a police lineup. She later identified him in court. The gist of the defendant's argument is that the lineup identification and the in-court identification were improperly admitted because the photographic identification was found to be unreasonably suggestive. We do not agree.

The lineup Mrs. Gappa viewed shortly after the arrest of the defendant consisted of five men of similar height, weight and color, all wearing overcoats of similar length and no hat or cap. Mrs. Gappa identified the defendant as the robber. At the time of his arrest, and in the lineup, he was wearing blue pants, and Mrs. Gappa had previously described the man who robbed her as wearing blue pants.

The trial court found the lineup identification sufficiently independent of the photographic identification to be reliable. At trial, the prosecution relied upon Mrs. Gappa's in-court identification of the defendant. The lineup identification was also brought out on cross-examination.

We conclude that the in-court identification of the defendant as well as the lineup identification were properly admitted in evidence. This court has summarized the tests for admitting identification evidence, as enunciated by the United States Supreme Court decisions, as follows:

". . . In *Stovall v. Denno* (1967), 388 U.S. 293, 87 Sup. Ct. 1967, 18 L. Ed.2d 1199, the United States Supreme Court announced that, independent of any *Wade-Gilbert* claim, an accused might gain relief if he could establish that he had been subjected to a confrontation 'so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.' Whether a due-process violation occurred at a confrontation was to be determined by 'the totality of the circumstances surrounding it.' This test is independent of whether or not counsel for the accused is present. In *Simmons v. United States* (1968), 390 U.S. 377, 88 Sup. Ct. 967, 19 L. Ed.2d 1247, the court ruled that an in-court identification, following an out-of-court identification, would be inadmissible if the out-of-court identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' In the very recent case of *Neil v. Biggers* (1972), 409 U.S. 188, 93 Sup. Ct. 375, 34 L. Ed.2d 401, the court also adopted this standard as governing the admissibility of testimony concerning the *out-of-court* identification." *Jones v. State,* 63 Wis.2d 97, 105, 106, 216 N.W.2d 224 (1974).

In determining the admissibility of an identification, this court has also said:

". . . [T]he reviewing court must first decide if the procedures were characterized by 'unnecessary suggestiveness.' If such infirmity was present, the court must then decide whether, despite the unnecessary suggestiveness, the 'totality of the circumstances' show that the identification was nevertheless reliable. In determining this latter question, *Biggers* indicated the following factors should be considered:

" ' . . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of the certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' " *Fells v. State,* 65 Wis.2d 525, 537, 223 N.W.2d 507 (1974), *quoting Neil v. Biggers, supra,* at 199, 200.

More recently in *Manson v. Brathwaite,* 432 U.S. 98, 106, *fn.* 9 (1977), the United States Supreme Court rejected the argument that a different test existed for in-court and out-of-court identifications. *Manson, supra,* at 110, also rejected a per se rule of exclusion whenever an out-of-court identification is found to be unnecessarily suggestive. Instead it approved the admission of the confrontation evidence if, despite the suggestive aspect, the out-of-court identification possesses certain features of reliability. The court said:

"We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-*Stovall* confrontations. The factors to be considered are set out in *Biggers.* 409 U.S., at 199–200 . . . These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson, supra,* at 114.

We believe the decisions of this court are entirely in accord with the holding of *Manson, supra,* and its predecessors.

In the case before us, the in-court identification is not claimed to be suggestive in itself. The claim is that the pretrial identification procedures were so suggestive that Mrs. Gappa's identification of the robber was irreparably

impaired. The trial court found the photographic identification was unnecessarily suggestive, and we agree. However, the test is reliability based upon all the circumstances. We conclude that the trial court was correct in finding that the lineup and in-court identifications were reliable.

The defendant also contends further suggestiveness occurred during the lineup because of the color of the pants he wore that day. But the inquiry is whether the amount of the suggestiveness was unnecessary. *Fells, supra.* This inquiry has two aspects: the degree of suggestiveness and the ease with which it could have been avoided. The general test was stated in *Wright v. State,* 46 Wis.2d 75, 86, 175 N.W.2d 646 (1970), as ". . . The police are not required to conduct a search for identical twins in age, height, weight or facial features . . . What is required is the attempt to conduct a fair lineup, taking all steps reasonable under the 'totality of circumstances' to secure such result."[1]

Among the factors to be considered are (1) the time between the crime, the arrest, and the lineup; (2) whether the item was worn by the defendant at the time of arrest, or supplied by the police; (3) the witnesses' consciousness of the distinctive feature; (4) the uniqueness of the item; and (5) the visibility of the distinctive item.

In *Penister v. State,* 74 Wis.2d 94, 246 N.W.2d 115 (1976), the court found no suggestiveness where the defendants were arrested on the day of the robbery in clothes matching those described by the witnesses and were placed in a lineup on the following day still

---

[1] *See also, Jones v. State,* 47 Wis.2d 642, 178 N.W.2d 42 (1970); *State v. Russell,* 60 Wis.2d 712, 719, 720, 211 N.W.2d 637 (1973), involving a precomplaint-warrant " 'showup' ".

wearing them. In *Schaffer v. State,* 75 Wis.2d 673, 250 N.W.2d 326 (1977), the court did not find impermissible suggestiveness where the defendant was the only member of the lineup having a gold earring and a scar over his left eye even though the witnesses noticed those features during the robbery eight days earlier. The police did not require the earring to be worn, and none of the witnesses testified that they noticed or were influenced by these features.

Here, the lineup was held on the day of the arrest, unlike *Schaffer, supra,* where several days passed. The instant defendant was wearing the clothes in which he was arrested and was supplied with an overcoat similar to those of the others in the lineup. All but the lower portion of the defendant's trousers were covered by the overcoat, and he and another person in the lineup had on overshoes. There is nothing unusual about a person wearing blue trousers. Furthermore, Mrs. Gappa never mentioned the color of the robber's trousers after her first conversation with the police shortly after the incident. Thus, the suggestiveness of the blue pants, if any, is analogous to that in *Penister* and *Schaffer, supra,* and does not make the identification unreliable.

Here Mrs. Gappa recognized the defendant as the man who had done her chimney work when he was on her porch the evening of the robbery and shortly before he entered her house. During the actual robbery she told him that she recognized him. Admittedly, the description of him that she gave the police was most general and would fit the description of many men. However, later in the evening she told her children that the robber was her chimney man and had them find the receipt which he had signed and which was admitted in evidence. She was consistent in her claim that the robber was the man who had done her chimney work, quickly selected him in the lineup and was certain of his identity at the

trial. The lineup confrontation occurred eight days after the incident and took place on the day of the arrest of the defendant. No unreasonable delays were involved in this factual situations.

Against these indicia of reliability, the court must balance any corrupting effect of the suggestive photographic identifications. When Mrs. Gappa first saw the defendant on her front porch she identified him as her chimney man. She never waivered from this initial conclusion. It is undisputed that the defendant was her chimney man, and all subsequent identifications confirm this fact. Although Mrs. Gappa did not positively identify the defendant in any of the photographic arrays, when viewing the third array she did pick up the picture of this defendant and say that the robber resembled him but was more tanned. As the trial court noted, photographs are not always easy to recognize, and Mrs. Gappa's eyes were badly swollen for several days after the incident.

Any suggestive procedures had only a minimal impact upon the reliability of her identification of the defendant as the robber. Considering the totality of the circumstances, the identification in the instant case was reliable. *Fells v. State, supra,* at 537.

*By the Court.*—Judgment affirmed.