STATE, Plaintiff-Respondent, v. STREICH, Defendant-Appellant.†

Supreme Court

*No. 76–570–CR. Submitted on briefs January 9, 1979.—Decided January 30, 1979.*

(Also reported in 274 N.W.2d 635.)

† Motion for reconsideration denied, without costs, on March 27, 1979.

For the appellant the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

CONNOR T. HANSEN, J.   At trial, Carl Williams, general manager of the TV Engineers shop in Kenosha, testified that about midnight on June 9, 1975, he was called to the shop by police because the burglar alarm had gone off.   He found the lock on the door to the

antenna shed behind the shop had been pried off and the door was open. An inventory taken the next day revealed that several items were missing. Two of these items were found by police on the ground several feet from the shed and a third was found in the alley. Williams' testimony was corroborated by Richard June, one of the police officers who responded to the alarm.

Officer June testified that when they arrived at the shop around 11:30 p.m. he and his partner drove up the alley behind the shop with the headlights off. When they were 30 to 50 feet from the shed they saw two men standing by the shed door. They turned the headlights on and the men first turned towards them, then ran. One of the men was black and the other was white and was later identified as the appellant. The white man had long brown hair and was wearing a blue denim jacket and green pants. They pursued the men in the car at first, getting within eight to ten feet of them, then lost sight of them when they split up and ran away from the alley between the buildings. The black man was apprehended near the scene moments later. The description of the white man was corroborated by the testimony of Officer Dennis Kaiser, the partner of Officer June.

A description of the white man was relayed over the radio. Richard Walthers, a patrolman several blocks away, testified that just prior to hearing the description he had passed a man of that description. He then circled around the block and stopped the man, the appellant herein. Officer June identified the appellant as the man he had seen behind the TV shop while the appellant was with Officer Walthers. This occurred twenty to thirty minutes after the police had first arrived at the shop.

Chris Nelson, who at 11:30 that evening was waiting for his father in the parking lot of a drive-in next to TV Engineers, testified that as the police car drove

up the alley he saw a man run out from behind the drive-in. He ran after the man, caught him, pulled him to the ground and came face to face with him. The man pleaded with him to let him go and Nelson released the man. In court he identified the appellant as the man he had caught. Nelson described the man as about his weight (130 pounds) but slightly shorter than his height (5′ 8–9″), with hair that was dark and messed up and wearing a denim jacket and dark pants.

The jacket appellant was wearing when arrested was admitted into evidence. Nelson said he was fairly certain that it was the same one the man was wearing that night because he had thought he had ripped the jacket when he grabbed the man's right shoulder. The jacket admitted into evidence was torn on the right side and had a hole in the corner.

Around 12:30 a.m. on June 10th, Detective Smith came to the Nelson home and asked Chris Nelson to come down to the police station. Nelson was told he was wanted at headquarters to identify a suspect; however, at this time Detective Smith had not seen the suspect and didn't know who he was. Nelson went to the police station with his father and Smith returned to the station in his automobile. The Nelsons and Smith entered the station from different doors. While Nelson was in the secretary's office at the police station he observed the appellant through an open door in the squad room at which time he recognized him as the person he had seen earlier that evening. He later observed the appellant for several minutes through a one-way glass door at which time he saw the appellant walk across the room. Nelson testified that all the police asked him was whether that was the same man and he could not recall that the police said anything else to him. There was no question in his mind while at the police station or at trial, that the appellant was the man he had caught at about 11:30 p.m. on June 9, 1975.

Arthur Lee Jenkins, the black man apprehended near the scene who pled guilty to the burglary charge, testified for the defense. He denied knowing the appellant and said he was alone that night. The appellant's mother testified that appellant's jacket had been ripped before that night.

The appellant testified that he had gotten out of work about 7 p.m. and had spent the evening with three friends. He said in an attempt to find something to do they had gone from the lakefront, to a party, then to a park, a drive-in and a vacant lot. They split up at the lot and he started to hitchhike home. He had gone about twelve blocks when he was stopped by the police. He testified that he repeatedly explained to the police that he didn't know what they were talking about. Appellant said the first time he ever saw Arthur Jenkins was the next morning in the cellblock.

Theodore Welch, a polygraph examiner for the state crime laboratory, testified that a polygraph examination he conducted of the appellant indicated that appellant was not truthful when he denied involvement in the burglary.

Further testimony will be related in our consideration of the issues raised on this appeal which are:

1. Did the trial court commit reversible error in denying the appellant's motion to suppress the eyewitness identification which took place at the police station?

2. Did the trial court commit reversible error in allowing the polygraph examiner to testify and refusing to allow the defense to present the results of its independent polygraph examination?

Prior to trial the appellant moved to suppress the evidence of the eyewitness' identification of the appellant by Chris Nelson which took place at the Kenosha police department the night of the burglary. The trial

court held an evidentiary hearing on the motion, and as a result of the hearing, concluded the eyewitness identification was not unnecessarily suggestive and therefore denied the motion. On appeal the appellant contends this determination by the trial court constituted reversible error. We are of the opinion that it does not.

In *Neil v. Biggers,* 409 U.S. 188 (1972), the United States Supreme Court reviewed its prior decisions on this issue, and stated:

"Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' . . . While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* [*v. Denno,* 388 U.S. 293 (1967)] makes clear, the admission of evidence of a showup without more does not violate due process.

"What is less clear from our cases is whether, as intimated by the District Court, unnecessary suggestiveness alone requires the exclusion of evidence. . . The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less reliable procedure where a more reliable one may be available, and would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process. . . Such a rule would have no place in the present case, since both the confrontation and the trial preceded *Stovall v. Denno, supra,* when we first gave notice that the suggestiveness of confrontation procedures was anything other than a

matter to be argued to the jury." *Neil v. Biggers, supra,* at 198, 199.

The Court then set forth the factors to be considered in making the ultimate determination of the admissibility of this evidence:

"We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. . . ." *Id.* at 199, 200.

This issue came before the United States Supreme Court most recently in *Manson v. Brathwaite,* 432 U.S. 98 (1977). In *Manson* the Court made it clear that the analysis established in *Neil v. Biggers* applied to post-*Stovall cases.* 432 U.S. at 107. The Court concluded that the fourteenth amendment did not require a strict exclusionary rule and that "reliability is the linchpin in determining the admissibility of identification testimony." *Id.* at 114. In making such a determination the factors set forth in *Neil v. Biggers* are to be considered. *Id.*

This court has recognized and applied these same criteria. *Simos v. State,* 83 Wis.2d 251, 254, 255, 265 N.W.2d 278 (1978). In *State v. Isham,* 70 Wis.2d 718, 235 N.W.2d 506 (1975), we held a one-to-one identification or police station showup is not per se suggestive and may be appropriate in some situations, and that such an identification while the witness' memory is fresh " 'pro-

motes fairness by assuring reliability' " and that an identification can prevent the holding of an innocent suspect. *Id.* at 724, 725.

The testimony of Chris Nelson at the preliminary examination, at the hearing on the motion to suppress and at trial is substantially consistent. The testimony of Detective Smith relating to his request for Nelson to come to the police station to identify a suspect has been set forth. Officer Kaiser, the person who took the appellant to the squad room, also testified at the hearing. He said that the door to the squad room was open when Nelson and his father entered the police station and that he saw Nelson standing outside.

The trial court found that the viewing of appellant through the squad room door by Nelson was not arranged by the police and that the police said nothing to the witness before he volunteered the initial identification. The fact is that when Detective Smith went to the Nelson home he was of the opinion he was looking for the suspect and it was only after communication with headquarters that he learned he was to have Nelson come to the police station to view a suspect. The trial court also noted the certainty of the witness in recognizing the jacket worn by the appellant, the fact that the identification took place only about an hour after the incident; that he was deliberate in making the identification through the one-way window and that no suggestive remarks were made by the police.

Chris Nelson testified three times during these proceedings, at the preliminary examination, the hearing on the motion to suppress and at trial. The entire proceedings extended over a period of approximately one year. The appellant directs our attention to some inconsistencies in the testimony of witness Nelson. These inconsistencies are material only as to the weight and credibil-

ity of his testimony and furthermore we do not deem them to be significant.

We conclude that the identification of the appellant by the witness was not the result of any unnecessary suggestiveness and that testimony as to both the in-court and out-of-court identifications was properly admitted.

The appellant next contends that the court committed reversible error in admitting the testimony of the state crime laboratory polygraph examiner, Theodore Welch.

This alleged error is founded upon the fact that the testimony was admitted on the basis of an oral stipulation, made in open court and a matter of record, rather than upon a written stipulation as required by *State v. Stanislawski*, 62 Wis.2d 730, 216 N.W.2d 8 (1974). The first requirement of *Stanislawski* is:

"(1) That the district attorney, defendant and his counsel all sign *a written stipulation* providing for defendant's submission to the test and for the subsequent admission at trial of the graphs, and the examiner's opinion thereon on behalf of either defendant or the state." (Emphasis added.) *Id.* at 742.

It is undisputed here that no written stipulation was executed in this case. The stipulation had been made in open court and was a matter of record. In all other respects the requirements of *Stanislawski* were followed in regard to the state crime laboratory examiner, Theodore Welch.

However, because defense counsel had not been provided with the questions and answers of the polygraph examination prior to trial, he initially objected to the admission of the results of the test. With the approval of the court, the parties finally agreed the appellant could call his own polygraph expert. Welch was qualified pursuant to *Stanislawski* and testified that the examina-

tion he conducted reflected that the appellant was not truthful when he denied involvement in burglary.

The appellant then proceeded to introduce the results of the examination of its expert and the state objected on the grounds that the polygraph machine used tested only the galvanic skin reflex and not respiration, blood pressure and pulse rates and was therefore not admissible, *Stanislawski, supra,* at 741. The trial court sustained the objection; however, the defense expert was subsequently qualified as an expert and evaluated the state's examination but was not permitted to testify regarding the results obtained by the use of his machine.

The appellant then moved to have the testimony of Examiner Welch stricken from the record. The trial court denied the motion and in so doing held that the oral stipulation of record satisfied the written stipulation requirement of *Stanislawski,* and that the failure of the defense to use a qualified testing method could not be used to prevent the results of the Welch examination from being admitted. We do not here infer that the results of an independent defense polygraph examiner should be admitted even if the method used were qualified. *Stanislawski,* and our subsequent cases, expressly make no provision for the admission of results from opposing experts.

*State v. Mendoza,* 80 Wis.2d 122, 258 N.W.2d 260 (1977), decided after the instant case was tried, held that any challenges to the manner in which the test was given or the data on which the conclusion of the examiner was based should be made at an admissibility hearing outside of the presence of the jury. *Id.* at 161. It was there held:

"Once presented with this evidence, the trial court has the option of admitting the evidence or rejecting it. If the evidence is admitted, the trial court must continue to exercise its discretion in preventing the trial from be-

coming derailed on collateral issues, while at the same time allowing sufficient leeway to allow the jury 'to determine what corroborative weight and effect such (examiner's) testimony should be given.' *Stanislawski,* 62 Wis.2d at 743." *Id.* at 161, 162.

Permitting the defense to have an independent examiner challenge the results of the stipulated examination in the presence of the jury is contrary to the rule of *Stanislawski,* and our holding in *Mendoza.* However, under the facts of this case the appellant cannot successfully contend the admission of such evidence constituted reversible error.

An issue remains as to whether an oral stipulation of record satisfies the *Stanislawski* written stipulation requirement. The written stipulation requirement of *Stanislawski* is clearly stated. This court has repeatedly restated this requirement. *Lhost v. State,* 85 Wis.2d 620, 648, 271 N.W.2d 121 (1978) ; *Zelenka v. State,* 83 Wis.2d 601, 613, 266 N.W.2d 279 (1978) ; *State ex rel. Harris v. Schmidt,* 69 Wis.2d 668, 683, 230 N.W.2d 890 (1975) ; *Gaddis v. State,* 63 Wis.2d 120, 126, 216 N.W.2d 527 (1974).

We recognize that sec. 807.05, Stats., provides for an oral stipulation made of record and in open court and that in *Schmidt v. Schmidt,* 40 Wis.2d 649, 653, 654, 162 N.W.2d 618 (1968), it was held that such a stipulation was binding upon the parties. However, that statute is part of the rules of civil procedure. In *Birts v. State,* 68 Wis.2d 389, 395 *fn.* 6, 228 N.W.2d 351 (1975), the court stated sec. 269.46(2), Stats. [now sec. 807.05] on stipulations was arguably applicable to criminal proceedings through sec. 972.11(1) :

"972.11 **Evidence and practice; civil rules applicable.** (1) Except as provided in sub. (2), the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings *unless the context of a section or*

*rule manifestly requires a different construction. . . ."* (Emphasis added.)

Therefore, the fact that an oral stipulation of record is adequate in some contexts does not mean that the expressed rule of *Stanislawski,* can be disregarded.

The record in the instant case reflects that the appellant knew the results of the test would be used as evidence at trial before he took the test. Therefore, while the rule of *Stanislawski,* requiring a written stipulation was not complied with, any error that resulted from the procedure followed was not reversible error.

As recently as *Lhost v. State, supra,* at 645, 646, this court reaffirmed its position on the *Stanislawski* stipulation rule. The written stipulation rule provides a record of the defendant's waiver of his right to object to admission of the results and his deliberate consideration of the waiver of such rights.

While we do not reverse in this case, we are of the opinion that if polygraph examination results are to be admitted in evidence, the rule should be followed.

*By the Court.*—Judgment and order affirmed.