Walter F. ROBINSON, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error. [Case No. 79–744–CR.]†

Walter Fitzgerald ROBINSON, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error. [Case No. 79–745–CR.]†

Supreme Court

*Nos. 79–744–CR, 79–745–CR. Argued November 26, 1980.— Decided February 2, 1981.*

(Also reported in 301 N.W.2d 429.)

† Motions for reconsideration denied, without costs, on March 9, 1981. ABRAHAMSON and CALLOW, JJ., took no part.

For the petitioner the cause was argued by *Bryan Borman*, assistant public defender, with whom on the briefs was *David Niblack*, state public defender.

For the defendant in error the cause was argued by *Kirbie Knutson*, assistant attorney general, with whom

on the brief was *Bronson C. La Follette,* attorney general.

DAY, J. This is a review of an unpublished decision of the court of appeals dated December 11, 1979, affirming on three writs of error the judgment and order of the circuit court for Milwaukee county: MAX A. RASKIN, Judge, and an order of the circuit court for Milwaukee county: CHRIST T. SERAPHIM, Judge.

Walter Fitzgerald Robinson (defendant) was convicted of forgery uttering, party to a crime, contrary to secs. 943.38 (2) [1] and 939.05,[2] Stats. 1975, following a

[1] "943.38. Forgery. (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, may be fined not more than $5,000 or imprisoned not more than 10 years or both:

"(a) A writing or object whereby legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights; or

"(b) A public record or a certified or authenticated copy thereof; or

"(c) An official authentication or certification of a copy of a public record; or

"(d) An official return or certificate entitled to be received as evidence of its contents.

"(2) Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered may be fined or imprisoned or both as provided in said subsection."

[2] "939.05. Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

jury trial. The judgment of conviction was entered on November 24, 1976, and the defendant was sentenced to not more than five years imprisonment. An order denying defendant's post-conviction motion for a new trial was denied by Judge Raskin on November 28, 1977. On May 11, 1979, an order was entered by Judge Seraphim denying another post-conviction motion for a new trial. Defendant brought three writs of error, challenging the judgment of conviction and the November 28th and May 11th orders.

The court of appeals affirmed the orders and judgment in a decision entered December 11, 1979. This court granted defendant's petition for review on July 8, 1980.

The defendant's principal claims of error include challenges to the validity of his arrest, the exclusion of polygraph evidence at trial and the change in the state's theory of defendant's liability. Numerous other claims of error raised by the defendant are also discussed in this opinion. We find no error and affirm the conviction and orders.

The defendant negotiated a $103.95 check drawn on an account in the name of Lloyd E. Brookens at a Walgreen Drug Store in Milwaukee on February 21, 1976.

---

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

■

The check was returned unpaid because the account was closed. That check is the subject of this prosecution.

The defendant's several claims of error and the facts relevant to those issues will be discussed in turn.

## I. *WAS DEFENDANT'S ARREST VALID?*

The defendant was arrested in Milwaukee county on March 15, 1976, on a warrant charging theft-by-lessee contrary to secs. 943.20(1)(e)[3] and 943.20(3)(b), Stats. 1975.[4] During police questioning on that charge, the defendant made statements concerning the check negotiated at Walgreens that is the subject of this case. The defendant argues that these statements were tainted because the complaint underlying the theft-by-lessee arrest warrant was deficient. The complaint incorporated a written rental agreement for audio equipment rented by the defendant on September 13, 1975. The defendant argues that the rental agreement could not be considered expired and therefore provided no probable cause to believe theft-by-lessee had occurred. Thus, he argues, the defendant's statements were the products of an illegal arrest.

■

We hold the arrest was valid. The equipment was rented on September 13, 1975. The rental agreement included a space labeled "Date to be Returned." That space was filled in with the date "9/15/75." Although

---

[3] "943.20. **Theft.** (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3): . . . (e) Intentionally fails to return any personal property which is in his possession or under his control by virtue of a written lease or written rental agreement, within 10 days after the lease or rental agreement has expired."

[4] "943.20. **Theft.** . . . (3) PENALTIES. Penalties for violation of this section shall be as follows: . . . (b) If the value of the property exceeds $100 but not $2,500, a fine of not more than $5,000 or imprisonment for not more than 5 years or both."

the agreement included a clause providing for additional rent if the equipment was returned after the date agreed upon, we do not believe that clause changed the expiration date of the rental contract.

The defendant also claims the arrest was invalid because the complaint failed to establish defendant's intentional failure to return the equipment. This claim is without merit. The equipment was not yet returned five months after the "Date to be Returned." The rental company representative had gone to the address given to the company by the defendant to recover the equipment, but was told no one by that name lived at that address and the defendant was not known to the residents of that house.

We hold that probable cause for the arrest existed and the statements made by the defendant were not the fruit of an illegal arrest.

## II. *DID THE CHANGE IN THE PROSECUTOR'S THEORY OF DEFENDANT'S LIABILITY DEPRIVE THE DEFENDANT OF DUE PROCESS, FUNDAMENTAL FAIRNESS AND ADEQUATE NOTICE?*

The criminal complaint charging defendant with forgery uttering, party to a crime, incorporates statements by Lloyd Brookens to the effect that the check cashed at Walgreens was not cashed by him or with his consent. At the preliminary hearing, Brookens testified that his checkbook had been stolen from his car; that he had not given the defendant or anyone else permission to sign his checks and that he did not personally know the defendant.

The information filed on which the defendant was tried charged forgery uttering as party-to-a-crime. On the morning of the trial, the prosecutor advised the court that he had changed his view of defendant's liability but refused to divulge to the defense his new theory of the

prosecution. During trial, the state's case proceeded on the theory that Brookens agreed to defendant's negotiating Brookens' checks and that the two were involved in a joint criminal venture.

The defendant's contention that this abrupt change of the prosecution theory denied him adequate notice, due process and fundamental fairness is without merit.

The prosecutor originally believed Brookens' story but later accepted the defendant's version that Brookens had consented to the defendant's signing his checks. Where the prosecutor's revised view of Brookens' involvement conformed to the defendant's statements to police some seven months before, the defendant can hardly claim "surprise." We find no denial of due process of law under these circumstances.

### III. DID THE EXCLUSION OF POLYGRAPH EVIDENCE OBTAINED IN A RELATED PROSECUTION DENY THE DEFENDANT'S RIGHT TO PRESENT HIS DEFENSE?

During the week from February 22 to February 28, 1976, the defendant wrote three other checks on Brookens' account at a Treasure Island store in the city of Brookfield in Waukesha county.

On March 25, 1976, defendant was charged with three counts of forgery uttering for the checks negotiated in Waukesha county. On July 22, 1976, the defendant, his counsel and an assistant district attorney for Waukesha county entered into a stipulation pursuant to *State v. Stanislawski*, 62 Wis.2d 730, 216 N.W.2d 8 (1974), providing that the defendant submit to a polygraph examination administered by the Wisconsin State Crime Laboratory and that either party could introduce the results at trial. The polygraph examination was administered to the defendant on September 21, 1976, by Robert B. Peters of the Regional Crime Laboratory in New Berlin.

The results of the lie detector test were favorable to the defendant. On March 2, 1977, the charges against the defendant were dismissed on request of the Waukesha county prosecutor, based on the outcome of the polygraph examiner's report.

The defendant sought to introduce Peters' testimony on the results of the polygraph examination stipulated to in Waukesha county during the trial in this Milwaukee county prosecution. The trial judge refused to admit this evidence.

The defendant contends that the exclusion of this evidence denied him his rights to testify in his own behalf, to present evidence in his defense, to have compulsory process of a witness and to have a fair trial.

In *State v. Stanislawski, supra,* this court set out definite conditions which must be met before polygraph evidence may be admitted at trial. First, among those conditions is:

"That the district attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs, and the examiner's opinion on behalf of either defendant or the state." *Stanislawski,* 62 Wis.2d at 742.

This court has required strict compliance with the stipulation requirements. In *State v. Streich,* 87 Wis.2d 209, 219–220, 274 N.W.2d 635 (1979), an oral statement made on the record was found to be an inadequate substitute for the written stipulation demanded by *Stanislawski.* In *Gaddis v. State,* 63 Wis.2d 120, 216 N.W.2d 527 (1974), this court found inadmissible polygraph evidence obtained through a test administered by the State Crime Laboratory. The defendant had requested the examina-

tion and the court had approved, but no stipulation had been made.

The court has previously rejected the argument that absent a stipulation the exclusion of exculpatory polygraph evidence denies the defendant's right to present reliable evidence. *Lhost v. State,* 85 Wis.2d 620, 271 N.W.2d 121 (1978).

In *Lhost,* the defendant offered the exculpatory testimony of a polygraph examiner in the absence of any *Stanislawski* stipulation.

The defendant contends that the instant case differs from *Lhost* in several crucial respects. First, the polygraph evidence offered was based on the same test stipulated to in Waukesha county. Second, the test was administered by an employee of the plaintiff state of Wisconsin. Third, the results of the test led the Waukesha prosecutor to dismiss three related felonies. Fourth, the Milwaukee county prosecutor relied on the Waukesha test results enough to change his theory of defendant's liability. Finally, the defendant asserts that by the stipulation of the Waukesha county prosecutor, the state has waived objection to the competency of the polygraph evidence.

We do not believe these facts demand a departure from the clear requirements of *Stanislawski.* The fact remains that there was no stipulation made by the Milwaukee county district attorney concerning the charges there, which involved a different check and a separate prosecution in another county.

The Waukesha stipulation provided in part, that the defendant:

". . . shall submit to a polygraph examination to be conducted at the Wisconsin State Crime Laboratory, *relative to the question of whether or not the defendant was responsible for the passing of three forged checks*

*at the Treasure Island Department Store in the City of Brookfield, Waukesha County, Wisconsin between the dates of February 22, 1976 and February 28, 1876."* (Emphasis added.)

In the Milwaukee county prosecution, no stipulation was made.

The stipulation requirement set up by this court in *Stanislawski* permits each of the parties to make an independent evaluation of the reliability of polygraph evidence and their willingness to rely on it. The district attorney holds considerable discretion in his handling of a prosecution. *State v. Johnson,* 74 Wis.2d 169, 173, 246 N.W.2d 503 (1976). A prosecutor's refusal to stipulate to the admission of the polygraph evidence was specifically found not to violate the defendant's due process rights in *Lhost, supra.*

This court adheres to the strict requirements set out in *Stanislawski.* A stipulation entered into in another prosecution, in a different county, by a different prosecutor does not meet the requirements of that procedure.

Even if we were to hold that the stipulation of one prosecutor could bind the district attorney in another county, the polygraph evidence from the Waukesha prosecution was not relevant to the Milwaukee county charges.

That stipulation, and the relevant questions asked during the examination related only to checks cashed at the Brookfield Treasure Island Store.[5]

---

[5] "(1) Last February did Lloyd Brookens ask you to buy merchandise at that Treasure Island Store with his checks? (Answer YES).

"(2) Did Brookens OK your cashing his checks? (Answer YES).

"(3) Did Brookens give you money to buy ID cards with his name? (Answer YES).

"(4) Did you give all the merchandise you bought at Treasure Island to Brookens? (Answer YES).

■

The polygrapher's report was also limited to the defendant's statements to the examiner on the Waukesha county charges.[6]

A letter dated May 25, 1979, from the polygraph examiner to the defendant was incorporated in a post-conviction motion filed by the defendant on April 3, 1979. In that letter the polygrapher states:

"Since I was not informed of the specifics of the charges against you in Milwaukee County and because you refused to even discuss those charges with me during your examination it is difficult to see how any conclusions regarding the Milwaukee County charges can be drawn from the polygraph examination I administered to you."

■

Because the polygraph evidence obtained in the Waukesha prosecution was irrelevant to the Milwaukee charges, and because there was no *Stanislawski* stipulation in the Milwaukee prosecution, the testimony was properly excluded.

---

"(5) Did you and Brookens plan to cash no good checks at that Treasure Island Store? (Answer NO).

"(6) Did Brookens say he would give you something of value for passing his no good checks? (Answer NO).

"(7) Before you tried to buy that camera did Brookens tell you his checks were no good? (Answer NO).

"(8) Did Brookens ask you to buy merchandise at Treasure Island with his checks? (Answer YES).

"(9) Did you give all the merchandise you bought at Treasure Island to Brookens? (Answer YES)."

[6] The report states:

". . . it is the opinion of the examiner that Robinson *was* truthful when he said that he had received authorization from Brookens to use Brookens' checks and when he said that Brookens had not informed him that the checks were no good until after he attempted to purchase a camera at the Brookfield Treasure Island Store." (Emphasis in original.)

## IV. DID THE TRIAL COURT'S REFUSAL TO PERMIT BOTH THE DEFENDANT AND HIS COUNSEL TO MAKE CLOSING ARGUMENTS TO THE JURY DEPRIVE THE DEFENDANT OF HIS CONSTITUTIONAL RIGHTS?

On the last day of trial, the defendant's counsel informed the court that the defendant wished to address the jury in closing argument. The court permitted the defendant or his counsel to address the jury, but not both.

The defendant contends that the choice presented by the trial court unconstitutionally burdened the defendant's rights under the 6th Amendment to the United States Constitution[7] and Art. I, Sec. 7 of the Wisconsin Constitution.[8]

We conclude that our decision in *Moore v. State*, 83 Wis.2d 285, 265 N.W.2d 540 (1978) *cert. denied*, 439 U.S. 956 (1978), controls this question. In *Moore*, this court upheld the trial court's refusal to permit both the defendant and his counsel to examine and cross-examine witnesses. The court reviewed the decisions of other jurisdictions, whose constitutions contain provision similar to Art. I, Sec. 7 of the Wisconsin Constitution, concluding that:

". . . the courts are in substantial agreement that a defendant has no constitutional right to be actively represented in the courtroom by counsel and by himself." *Moore*, 83 Wis.2d at 300.

---

[7] "Constitution of the United States. AMENDMENT [VI]. In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense."

[8] "ARTICLE I. DECLARATION OF RIGHTS. SECTION 7. Criminal Cases; Right To Counsel; Nature And Cause Of Accusataion; Witnesses; Process For Witnesses; Speedy And Public Trial; Venue. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . ."

■ Though the defendant here sought to address the jury in closing arguments, we believe that under *Moore,* the defendant may choose to represent himself personally or by counsel, but not both. Here the defendant voluntarily chose to be represented by counsel rather than represent himself. Accordingly, we find no denial of his state or federal constitutional rights.

## V. *DID THE TRIAL COURT FAIL TO ADE-QUATELY INSTRUCT THE JURY ON INTENT TO DEFRAUD?*

In his instructions on the elements of forgery uttering, the court informed the jury that the state must prove beyond a reasonable doubt that "the document in question was a forged check. And I have already defined forgery for you." Immediately before the judge had advised the jury as follows:

"Forgery is defined in law as committed by one who with intent to defraud, falsely makes or alters a writing or object whereby legal rights are created or transferred so that it purports to have been made by another."

The court had rejected the defendant's proposed instruction on this issue.

Intent to defraud in these circumstances required the jury to find that the defendant knew when he uttered or passed the check at Walgreens, that the check was "no good." This issue was extensively argued at trial. The trial court informed the jury of the requirement of intent to defraud in its definition of forgery.

 Instructions to the jury are to be considered as a whole. *Loveday v. State,* 74 Wis.2d 503, 518, 247 N.W.2d 116 (1976). This court has stated that where the court's instructions adequately cover the law applicable to the facts, the court will not find error despite the court's

failure to give appropriate instructions requested by the defense. *Moes v. State,* 91 Wis.2d 756, 770–771, 284 N.W.2d 66 (1979).

Considered as a whole, these instructions adequately apprised the jury that the state must prove, that when the defendant cashed the check at Walgreens, he knew the check was worthless and would therefore defraud either the store or the payee bank.

## VI. *DID THE JURY INSTRUCTIONS ON PARTY-TO-A-CRIME LIABILITY, WHICH FAILED TO INCLUDE THE BEYOND-A-REASONABLE-DOUBT STANDARD, VIOLATE DEFENDANT'S CONSTITUTIONAL RIGHTS?*

It is clear that every fact necessary to constitute criminal liability must be proven beyond a reasonable doubt. *In re Winship,* 397 U.S. 358 (1970) ; *Turner v. State,* 76 Wis.2d 1, 250 N.W.2d 706 (1977).

The trial court, in its instructions on party-to-a-crime liability did not specifically state that the elements of that liability must be proved by the state beyond a reasonable doubt.

The court did give the proper instructions on party-to-a-crime liability.[9] The court also instructed the jury that they should not single out any one instruction, but should consider the instruction as a whole, and that every element of the crime charged must be proved by the state beyond a reasonable doubt.

Taken as a whole, the instructions properly set out the burden of proof on party-to-a-crime liability.

## VII. *DID THE EVIDENCE WARRANT THE TRIAL COURT GIVING AN INSTRUCTION ON PARTY-TO-A-CRIME LIABILITY?*

The defendant argues that there was no evidence to

[9] Wis J I 400—Criminal.

support a conviction based on party-to-a-crime and that the jury was therefore authorized to return a verdict of guilty on an unconstitutional theory of liability.

In *Frankovis v. State,* 94 Wis.2d 141, 149, 287 N.W.2d 791 (1980), this court described the elements of aiding and abetting under sec. 939.05, Stats., as follows:

"The elements of aiding and abetting are that a person (1) undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance. *Krueger v. State,* 84 Wis.2d 272, 285, 267 N.W.2d 602 (1978); *Roehl v. State,* 77 Wis.2d 398, 407, 253 N.W.2d 210 (1977); *State v. Manson,* 76 Wis.2d 482, 486, 251 N.W.2d 788 (1977). Where one defendant knows another is committing a criminal act, he should be considered a party thereto 'when he acted in furtherance of the other's conduct, was aware of the fact that a crime was being committed, and acquiesced or participated in its perpetration.' " (Quoting *Roehl, supra,* 77 Wis.2d at 407.)

In this case there was evidence to support party-to-a-crime liability.

The defendant's written statement conceded that he had written the check at Walgreens and signed Lloyd Brookens' name to the check. Defendant also acknowledged that he and Brookens had obtained a false identification card to "pass the checks," and that he and Brookens "split up the merchandise that was purchased."

Although there were conflicting statements made by the defendant concerning his knowledge that the checks were no good, there was evidence from which the jury could find such knowledge.[10]

---

[10] Officer Louis Damke of the Milwaukee Police Department testified concerning statements made by the defendant during police questioning on March 15, 1975. On cross-examination the following exchange took place between Damke and defendant's counsel:

This evidence provided support for the court's party-to-a-crime instruction and the jury's verdict of guilty.

VIII. *DID THE TESTIMONY OF LLOYD BROOKENS DENY THE DEFENDANT HIS RIGHT TO PRESENT A DEFENSE, TO CONFRONTATION, TO EQUAL PROTECTION AND DUE PROCESS?*

Brookens, a prosecution witness, testified on direct examination that he owned the check uttered by the defendant, but that he had not written or signed the check. During cross-examination, Brookens made a nonresponsive remark stating that he would "not jeopardize the safety of my family due to my testimony." He then exercised his Fifth amendment privilege and refused to testify.

The defendant argues that the prosecutor's calling the witness and eliciting answers on direct examination, while refusing to move for immunity when the witness refused to testify on cross-examination denied the defendant his right to confrontation and to present his defense. The defendant also argues that the trial court's permitting the witness to claim his Fifth amendment privilege under these circumstances denied defendant equal protection of the law.

We do not find these arguments persuasive. Brookens testified only to facts admitted by the defendant.

The district attorney had the discretion to request the court to compel Brookens to testify under the grant of immunity under sec. 972.08(1), Stats. 1977. Here the prosecutor pursuant to his discretion declined to seek immunity.

---

*"Question:* Now, you indicated that Mr. Robinson made the statement to you that he had knowledge and that he believed at the time that these checks were issued that they were no good, isn't that right? Wasn't that your testimony, officer?

*"Answer:* Yes, sir."

After the witness claimed his Fifth amendment privilege, the trial court had his entire testimony stricken and advised the jury to disregard all of the questions and answers put to Brookens. We hold that this instruction cured any prejudice to the defendant stemming from Brookens' testimony. *State v. Monsoor,* 56 Wis.2d 689, 701, 203 N.W.2d 20 (1973).

*By the Court.*—The judgment and orders are affirmed.

ABRAHAMSON, J., took no part.
CALLOW, J., took no part.