REDEPENNING, Plaintiff in error, v. STATE, Defendant in error.

*No. State 114. Submitted under sec. (Rule) 251.54 September 11, 1973.—Decided October 2, 1973.*
(Also reported in 210 N. W. 2d 673.)

For the plaintiff in error the cause was submitted on the briefs of *J. David Rice*, of Sparta.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

ROBERT W. HANSEN, J.   The defendant was found guilty and sentenced for the crimes of rape and threatening to do injury to the person of another.  He claims three flaws in the sequence of proceedings that led from charge to trial to conviction to sentencing.  Each claim of error is separable from the others, and each will be separately discussed.

*Place of rape.* Defendant claims that the allegations of the complaint as to where the crimes were committed are insufficient.

The exact language of complainant Sheriff Ray Harris of Monroe county as to where the crimes were committed is as follows:

". . . complainant informed that he is an adult resident of the city of Sparta, Monroe county, Wisconsin, and is the sheriff for said Monroe county and was acting in that capacity on and immediately prior to November 21, 1971; that Jeff Banta, sheriff for Vernon county, Wisconsin, did radio the Monroe county sheriff's department that two girls had contacted his office advising that one of the girls had been raped; that his investigation indicated that the offense occurred in Monroe county; that complainant drove to the town of Wellington where he met the sheriff for Vernon county and the two girls [names of the two girls here stated, ages, and addresses]. . . that both girls are students at said University; that they informed that they had been hitch-hiking on Interstate Highway 90 at the Highway 51 interchange in Dane county, Wisconsin; that the defendant was driving a light colored late model Ford Ltd automobile did pick the girls up at said location; that defendant was alone in the car; that he drove them on Interstate Highway 90; that they stopped and defendant purchased a 6-pak of beer; that defendant consumed approximately 4 containers of beer; that defendant had indicated that he would drive them to La Crosse, but that he was looking for deer, and they observed a rifle in the back seat of the car, that one of the girls was riding in the front seat and one of the girls in the rear seat; that defendant did drive in the Ontario and Kendall areas; that he drove on a town road to a vacated farmhouse and stated that he was going to shoot a deer; that he stopped the car and took the rifle and got out of the car and that the girls heard what they thought was the opening of the bolt and inserting of a bullet in the chamber of the rifle; that defendant then turned and pointed the rifle towards the interior of the car towards the girls and told them to take off their clothes; that

both girls stated they would not remove their clothing; that defendant stated that he would shoot [name of rape victim] . . .; that [name of rape victim's companion] . . . informs that she believes that she fainted; that when she regained consciousness the defendant again threatened to kill them if they did not remove their clothes; that both girls then removed their clothing; the defendant got into the front seat and did participate in taking off the clothing from [name of rape victim] . . .; that one of the girls attempted to grab the defendant's hunting knife but was unable to do so; that defendant pulled his pants down and did forcefully have sexual intercourse with the said [name of rape victim] . . ., against her will and against her resistance; after having sexual intercourse with the said [name of rape victim]. . ., defendant allowed the girls to put their clothing back on and he drove from said area of the vacated farmhouse which was later pointed out to the sheriff for Vernon county as and determined to be in the town of Wellington, Monroe county; that said occurrence took place at approximately 7 o'clock or 8 o'clock p. m. on November 21, 1971, that defendant stopped the car and got out to go to the bathroom and that said girls jumped from the car and ran and flagged down another car; that they had obtained a portion of the number of the license plate on the defendant's vehicle, that they notified the Vernon county sheriff's department of the occurrence and furnished a description of the defendant, his vehicle, and his license number; that said girls were taken by Vernon county squad car to La Crosse where they said [name of rape victim]. . . was referred to a doctor; that the girls did furnish an oral statement; that complainant proceeded to make an investigation and did find a light colored late model Ford Ltd automobile bearing a license plate similar in number to that furnished by said girls, parked at the Jerry Downing farm at Route 1, Ontario, Wisconsin; that complainant inquired at said residence and talked to Jerry Downing who informed that the vehicle was a rented car rented by Donald J. Redepenning who was present in the house; that complainant requested to talk to defendant; that defendant did identify himself as Donald J. Redepenning; that Jerry Downing informed that he loaned defendant a rifle; that defendant did furnish a voluntary statement in writing that he had

picked up two girls and had driven them to a vacated farm area and that he had had sexual intercourse with one of the girls, but he stated that she consented to such intercourse."

The defendant's claim is that the allegations concerning where the crimes occurred were "based on hearsay and did not show circumstances from which the magistrate could find that the hearsay informant was credible and his information reliable." We find the claim of error without substance. A complaint in this state is ". . . a written statement of the essential facts constituting the offense charged," and ". . . It may be made on information and belief. . . ." [1] Where the adequacy of the written complaint is challenged, it must be determined whether there are facts in the complaint which are themselves sufficient or give rise to reasonable inferences which are sufficient to establish probable cause. [2] The test is one "of minimal adequacy, not in a hypertechnical but in a common sense evaluation." [3]

The challenged portion of the complaint here concerns the sheriff's assertion as to the location of the situs of the crimes. It is an entirely reasonable inference that the two victims of the crime charged pointed out the place where the crimes took place to the sheriff of Vernon county and that he, in turn, relayed or forwarded this information to the complainant, the sheriff of Monroe county. As to the place of crime, the statement is based upon hearsay or information furnished to the complainant by someone else, but a complaint may be based upon hearsay information if the complaint shows the reliability of the hearsay information. [4] Involved are "the underly-

---

[1] Sec. 968.01, Stats.

[2] *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 173 N. W. 2d 175.

[3] *State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 226, 161 N. W. 2d 369, citing *United States v. Ventresca* (1965), 380 U. S. 102, 109, 85 Sup. Ct. 741, 13 L. Ed. 2d 684.

[4] *State ex rel. Cullen v. Ceci, supra*, at page 445.

ing circumstances" from which the complainant concludes the source of information is reliable and that the information was reliably obtained.[5]

In the case before us, there is a double or twofold basis for the complainant concluding that the crimes were committed in Monroe county. As to whether the deserted farmhouse involved was located in Monroe county or some other county, the complaint makes clear that the complainant met the sheriff of Vernon county, who had reported to him the facts concerning the rape, and the two victims of the crime at the farmhouse. Both sheriffs reasonably can be inferred to have knowledge of the limits of their own and surrounding counties, not as exact as that of the surveyor who determined the county line but greater than that of an ordinary citizen. Additionally, the sheriff who initially reported the crime to the complainant sheriff received information as to the place of the crime from the two victims of the crimes, both named in the complaint. As to where the crime occurred as well as to what took place, ". . . what better basis can there be than that of eyewitness testimony." [6] As to a victim of a crime, as well as to an eyewitness of a crime, the reliability of his report is to be evaluated ". . . from the nature of his report, his opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation." [7] The magistrate was entitled to conclude that the two victims of the crime told the sheriff of Vernon county where the crimes took place, i.e., that the Vernon county sheriff went to the farmhouse and, determining that it was in Monroe county, notified the Monroe county sheriff to meet him and the victims of the crime at the

---

[5] State v. Knudson (1971), 51 Wis. 2d 270, 274, 187 N. W. 2d 321.

[6] State ex rel. Cullen v. Ceci, supra, at page 446, cited and quoted in State v. Knudson, supra, at page 276.

[7] State v. Paszek (1971), 50 Wis. 2d 619, 631, 184 N. W. 2d 836.

farmhouse. That appears to be entirely proper police procedure and an entirely reasonable basis for the magistrate concluding that probable cause was shown that the crimes had occurred in Monroe county.

*Statement by defendant.* The defendant gave a statement to the sheriff in which he stated that he did have sexual intercourse with one of the girls whose complaint initiated the investigation, but stated the act of intercourse was voluntary on her part, not forced at gunpoint as she asserted and the jury found. The statement consisted of seven handwritten pages, each page of which was signed by the defendant after he had been given the opportunity to read what the sheriff had transcribed. Prior to trial an extensive *Goodchild* hearing was held on the admissibility of this statement, made before counsel was appointed to represent the defendant in the proceedings.

At the hearing the sheriff testified that the defendant was arrested in the early morning hours at a farmhouse at which he was staying. He was advised of his rights at that time, the sheriff reading from a *Miranda* warning card he carried in his wallet. The sheriff asked defendant if he understood his rights and if he wanted an attorney. The defendant said nothing. Defendant was then taken to the Monroe county jail. Subsequently, he was taken to an interview room and advised that an investigation was in progress and that he fit the description of the alleged assailant given by the victims. He was again advised of his right to remain silent and to have counsel appointed for him. He was again read his rights from the printed *Miranda* warning card that the sheriff carried with him. He was then given the opportunity to read the card, and asked if he understood these rights. He answered "Yes" the sheriff testified. He was then asked, "Realizing that you have these rights, do you wish to consult with an attor-

ney." He answered "No" the sheriff testified. He was then asked, "Realizing that you have these rights do you wish to answer questions or make a statement now without an attorney present?" He answered "Yes" the sheriff testified. The sheriff entered these responses on the warning card, each answer following the appropriate question. The defendant then signed the card in the presence of the sheriff and a deputy. The defendant testified that, "I believe he advised me of my rights and I made a statement that yes I would like Bill Johnson from Madison but I would go ahead and answer some questions." At the conclusion of the hearing, the trial judge found that the *Miranda* warnings had been given and that the defendant had executed a valid waiver and voluntarily made the statement given by him to the sheriff.

As to the detailed findings of fact made by a trial court after a *Goodchild* hearing, these are not to be overturned on appeal unless they are against the great weight and clear preponderance of the evidence.[8] Here the testimony and reasonable inferences that can be drawn from the evidence[9] clearly support the trial court's holding that the defendant was informed, repeatedly so, of his rights and waived his right to remain silent by voluntarily giving a statement to the sheriff. Even in situations where a request for legal counsel was made by an accused, it has been held by this court that there is no barrier that prevents such accused person in custody from changing his mind and withdraw-

[8] *State v. Hunt* (1972), 53 Wis. 2d 734, 740, 193 N. W. 2d 858; *See also: Schwamb v. State* (1970), 46 Wis. 2d 1, 173 N. W. 2d 666; *State v. Herrington* (1969), 41 Wis. 2d 757, 771, 165 N. W. 2d 120; *State v. Carter* (1966), 33 Wis. 2d 80, 90, 91, 146 N. W. 2d 466.

[9] *See: Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725.

ing his request for counsel.[10] Here the defendant's mention of an attorney's name was coupled, the defendant himself testified, by his statement that he "would go ahead and answer some questions." The defendant was informed of his right to counsel and to remain silent on two separate occasions. He was given the opportunity to read the *Miranda* warning card. He signed the waiver of rights card or form after the sheriff had noted on it the answers to the questions asked, including his negative response when asked if he wished to consult with an attorney. There is no basis for finding either reluctance or ambivalence in his willingness to make and sign a statement in the absence of counsel. The trial judge had here a firm foundation for his conclusion that the statement was voluntarily given.

Defendant's counsel cites federal cases where an accused refused to sign a waiver of rights form, particularly the *Nielsen Case* where the defendant refused to sign a waiver of rights form and said he wanted to talk to his attorney before signing a waiver form.[11] More analogous is the more recent *Springer Case* where the defendant, as in the case before us, did sign a waiver of rights form after he had been read his rights and allowed an opportunity to read the form.[12] In *Springer*, the federal appeals court stated, ". . . we are not of the opinion that a law enforcement agent has to engage in a violent argument with an in-custody subject to a point beyond that reasonably necessary to assure effective communication. . . . [W]e hold . . . that the facts as presented by the Government in this case (the signed waiver form and the undisputed testimony that the form had

---

[10] *Sharlow v. State* (1970), 47 Wis. 2d 259, 269, 270, 177 N. W. 2d 88, certiorari denied, 400 U. S. 881, 91 Sup. Ct. 126, 27 L. Ed. 2d 119. *See also: State v. Hunt, supra,* at page 745.

[11] *United States v. Nielsen* (7th Cir. 1968), 392 Fed. 2d 849.

[12] *United States v. Springer* (7th Cir. 1972), 460 Fed. 2d 1344.

been read to and by the defendant and that he said he understood) is sufficient to raise a presumption of validity and shift the burden of going forward to the accused who must present some facts tending to show that the waiver was not voluntary or knowledgeable. . . ."[13] We concur in the result and reasoning of the *Springer Case* and hold that the trial court was entirely warranted in holding the voluntary statement of defendant admissible in evidence.

*Intent to rape.* Defendant claims that the trial court erred in not instructing the jury that intent is a required element of the crime of rape. Sec. 944.01, Stats., defines the crime of rape.[14] It uses none of the statutorily spelled-out words that would indicate that intent to rape is an element of the crime of rape.[15] The element of intent as to the statutory crimes is only necessary when specified by statute.[16] Directly on point, this court recently held, "Specific criminal intent is not an

---

[13] *Id.* at pages 1348, 1349.

[14] "944.01 **Rape.** (1) Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years.

"(2) In this section the phrase 'by force and against her will' means either that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm."

[15] Sec. 939.23 (1), Stats., provides: "When criminal intent is an element of a crime in the criminal code, such intent is indicated by the term 'intentionally', the phrase 'with intent to', the phrase 'with intent that', or some form of the verbs 'know' or 'believe.'"

[16] *Flowers v. State* (1969), 43 Wis. 2d 352, 360, 168 N. W. 2d 843, quoting the dissenting opinion in *State v. Alfonsi* (1967), 33 Wis. 2d 469, 486, 147 N. W. 2d 550, stating, "Whenever the code intends a crime to include a specific criminal intent, it so provides or exact language is used which comes under sec. 939.23, Stats., which defines when intent is an element of a crime."

element of the crime of rape." [17] As was said in the *Brown Case*, ". . . If specific intent to use force and violence is not an element of the crime [of rape] it is certainly not error to refuse to so instruct on such ground." [18]

*By the Court.*—Judgment affirmed.

---

[17] *Brown v. State* (1973), 59 Wis. 2d 200, 214, 207 N. W. 2d 602.

[18] *Id.* at page 214.