FRANKOVIS, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–436–CR. Submitted on briefs January 9, 1980.— Decided February 7, 1980.*
(Also reported in 287 N.W.2d 791.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, *Mel S. Johnson* and *Marcus T. Johnson,* assistant state public defenders.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Betty R. Brown,* assistant attorney general.

WILLIAM G. CALLOW, J. The plaintiff in error, Gregory Frankovis (defendant), was convicted following a jury trial of being a party to the crime of robbery, contrary to secs. 943.32 (1) (a) and 939.05, Stats. 1975. On review he seeks reversal of his conviction and reversal of the order denying his motion for a new trial on three

grounds: the evidence is insufficient to sustain the verdict; the trial court erred in admitting into evidence two photographs of the victim and allowing them to go to the jury room; and a new trial should be granted in the interest of justice. We affirm the judgment and the order of the trial court.

At approximately 3:30 a.m., Sunday, April 27, 1975, Gregory Nauertz (Nauertz) went to the New Yorker Lounge in Milwaukee to meet his girl friend who was employed there. He testified that as he entered the front door to the tavern he was grabbed and thrown to the floor. Nauertz stated he saw that the person on top of him on the floor was the defendant and that he could see no other person. The defendant began to beat Nauertz about the face with his fists. Nauertz also testified that he heard the defendant say, "Kick him in the head, let's kill him." After hearing this, Nauertz felt someone kicking him in the head and choking him, although he did not know if the defendant was doing the kicking. However, Nauertz testified that at the time he was being kicked in the head the defendant was sitting on top of him, straddling him, and the defendant's feet were towards Nauertz's feet.

At trial Nauertz identified his wallet which had been kept in his right, rear pocket and a chain which had been attached to the wallet and to his belt on the night of his beating. Thirty-seven dollars had been in the wallet when he entered the tavern. Nauertz did not know if the wallet had left his possession while he was in the tavern, but he discovered it was missing when he was at the hospital. He next saw the wallet in the Police Administration Building when the police returned the $37 and his driver's license.

The two police officers first to arrive on the scene testified that they looked through a window of the front door of the New Yorker Lounge and saw the defendant

on top of Nauertz, straddling him and choking him. Patrolman Randy Baier testified that as he and his partner entered the tavern, the defendant was getting off Nauertz, and while not then arrested, the defendant remained in police custody or view. Both Baier and Patrolman Peter Simet testified that they saw defendant's codefendant, Robert Koller (Koller), kicking Nauertz in the side. Simet testified that, when the bartender came to open the front door of the New Yorker Lounge for the police, he saw Koller run toward the rear door of the tavern. The defendant was in the vicinity of the back door, but he was restrained from leaving.

When Patrolman Richard Gross arrived on the scene, he was waved down by Baier and told to cover the rear door of the tavern. As he approached the rear hallway, he saw a man come out the rear door and throw a black wallet with a chain attached to it onto the ground. The wallet was identified as belonging to Nauertz. Gross testified he stopped the man who identified himself as Koller. Gross walked the man back into the tavern and turned the man over to Patrolman Larry Parr. When Gross identified the man in court, he identified the defendant, not Koller. However, Parr and Patrolman David Nowak identified Koller as the man with whom Gross entered the tavern.

Barbara Johnson (Johnson), Nauertz's girl friend, testified that shortly before 3:30 a.m. on April 27, 1975, the defendant and Koller entered the tavern. The bartender got rid of the last three patrons and locked the front door, with himself, Johnson, Koller, and the defendant still in the tavern. Then the bartender announced that Nauertz was coming and unlocked the door. Johnson was about to warn Nauertz that it was a trap, but Nauertz entered the tavern before she was able to do so. She testified that the defendant and Koller grabbed Nauertz as he entered the front door. She said that the defendant

said, "I'm going to kill you," and started to beat Nauertz, choking him and punching him while lying on top of him. She said Koller was kicking Nauertz in the head. She testified that, when the police began to pound on the front door, Koller ran toward the back door; the defendant was still on top of Nauertz when the police entered. Johnson testified that she did not see anyone remove Nauertz's wallet.

Prior to resting, the state moved that two photographs taken of Nauertz within 36 hours of the beating be received in evidence. The defense objected on the grounds that there had been no compliance with the requirements of sec. 270.202, Stats., 1973.[1] The defense did not object to the admission of the photographs on the grounds that they were gruesome or inflammatory, or on the ground that the dangers of unfair prejudice outweighed any probative value the photographs may have. The state argued that sec. 270.202 no longer was applicable, and the trial court admitted the photographs in evidence.

Koller testified that he had gone to the New Yorker Lounge the night in question and that a bar fight broke out while he was there, although he did not see the face of either of the two males fighting. He stated he disengaged himself from the wrestling on the floor by kicking and then left by the back door of the bar. He was arrested by arriving officers as he was outside the tavern and accompanied the arresting officer back into the tavern. He stated Nauertz then noticed his wallet was miss-

[1] Section 270.202, Stats. 1973, provides:

"270.202 **Identification of photographs.** Unless deemed impracticable by the trial judge, each photograph received in evidence shall have either upon its face or upon its reverse side or upon a slip attached to it a statement of the position of the camera, the distance from the object photographed, the direction in which the camera was pointed and such further information as may be appropriate."

ing and that the police instigated a search for it. He denied ever having Nauertz's wallet in his possession.

The defendant testified that he did not start the fight with Nauertz. He claimed that, as he was walking out the front door of the tavern, he was struck in the eye. He stated he then "reached out and grabbed whoever it was by the shoulders and I felt another blow to the side and we started scuffling around and blows were being exchanged and there was a lot of confusion." He denied taking Nauertz's wallet.

While the jury was deliberating, the trial court sent the photographs of Nauertz to the jury room. Defense counsel again objected on the ground that they had not been properly received into evidence for lack of compliance with sec. 270.202, Stats., 1973. The trial court overruled the objection, stating the photographs had been properly identified.

The jury returned a verdict of guilty. Thereafter the defendant was sentenced to an indeterminate term of imprisonment not to exceed six years and six months. Defendant filed a motion for new trial, raising the claims presented on this review. The motion was denied.

The defendant argues that the evidence was not sufficient to support his conviction as a party to the crime of robbery, in that there was insufficient evidence from which the jury could reasonably conclude that he acted with the intent to aid in the taking of Nauertz's wallet. This court has stated the test for determining the sufficiency of the evidence as follows:

"[W]hen the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. . . . This ultimate test is the same whether the

trier of the facts is a court or a jury. . . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true."

*Lock v. State,* 31 Wis.2d 110, 114–15, 142 N.W.2d 183 (1966) ; *See also: Clark v. State,* 92 Wis.2d 617, 633, 286 N.W.2d 344 (1979). It is not necessary that this court be convinced of the defendant's guilt; the reviewing court need only be satisfied that the jury acting reasonably could be so convinced. *State v. Koller,* 87 Wis.2d 253, 266, 274 N.W.2d 651 (1979). A conviction may be based in whole or in part on circumstantial evidence. *Id.; Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971). The test of sufficiency, when circumstantial evidence is relied upon, is whether the evidence is strong enough to exclude to a moral certainty every reasonable hypothesis of innocence. *Struzik v. State,* 90 Wis.2d 357, 364, 279 N.W.2d 922 (1979).

The defendant was charged and convicted of being a party to the crime of robbery, contrary to secs. 943.32 (1) (a) and 939.05, Stats., 1975. These statutes provide in relevant part:

"943.32 **Robbery.** (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means may be imprisoned not more than 10 years:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or"

"939.05 **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been con-

victed or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime."

To sustain the defendant's conviction, the evidence must support the conclusion that the defendant intentionally aided and abetted the commission of the robbery under sec. 939.05 (2) (b), Stats. 1975.

The elements of aiding and abetting are that a person (1) undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance. *Krueger v. State,* 84 Wis.2d 272, 285, 267 N.W.2d 602 (1978); *Roehl v. State,* 77 Wis.2d 398, 407, 253 N.W.2d 210 (1977); *State v. Manson,* 76 Wis.2d 482, 486, 251 N.W.2d 788 (1977). Where one defendant knows another is committing a criminal act, he should be considered a party thereto "when he acted in furtherance of the other's conduct, was aware of the fact that a crime was being committed, and acquiesced or participated in its perpetration." *Roehl v. State, supra* at 407. "[D]efendants may be found guilty of being concerned in the commission of a crime if, between them, they perform all the necessary elements of the crime with mutual awareness of what the other is doing." *Roehl v. State,*

*supra* at 407–08; *Hawpetoss v. State,* 52 Wis.2d 71, 79, 187 N.W.2d 823 (1971).

Because no witness testified to seeing Nauertz's wallet being taken from him by either the defendant or Koller, the conviction is based in part on circumstantial evidence. Nauertz had the wallet with him when he entered the tavern. It was in his right, rear pocket attached to a chain which was clipped to his belt. He next saw the wallet in the Police Administration Building. Because the evidence showed that Nauertz was set upon as soon as he entered the door of the tavern, he never got near the rear door. Thus there is no reasonable possibility that Nauertz lost the wallet near the rear door. Nor is there a reasonable possibility that Nauertz and his wallet were separated unintentionally, due to the fashion in which the wallet was attached to Nauertz's belt. The evidence and the reasonable inferences drawn therefrom establish that Koller obtained the wallet after Nauertz was pinned to the floor by the defendant. The evidence and the inferences also establish that the defendant and Koller were aware of what each other was doing. Koller was obviously aware that the defendant had Nauertz flat on his back on the floor and was beating and choking him. The evidence and inferences also support a conclusion that the defendant and Koller trapped Nauertz with an intent to rob him. Even if the defendant had no prior intent to rob Nauertz, the evidence and inferences support the conclusion that, as soon as Koller reached towards Nauertz's right, rear pocket, the defendant became aware of Koller's intent and also aware that Koller subsequently did take Nauertz's wallet. The evidence discloses no reasonable possibility that the defendant was not aware of Koller's actions. Because the wallet was in Nauertz's right, rear pocket, the wallet was under Nauertz who was flat on his back on the floor and also under the defendant who was on top of Nauertz, straddling

him. The evidence would be insufficient to support the defendant's conviction only if Koller had reached under Nauertz and the defendant into Nauertz's pocket, extracted the wallet, and broken the fastening of the chain to the belt without the defendant becoming aware of his actions.

This is not a reasonable hypothesis of innocence; the jury could find beyond a reasonable doubt that the defendant participated in the robbery of Nauertz. Defendant contends the contrary, arguing that the evidence "indicates an intent to injure, as opposed to an intent to rob." However, the use of force with the intent to overcome a victim's physical resistance or physical power of resistance is an element of the crime of robbery. Sec. 943.32(1)(a), Stats. 1975. In *Bautista v. State, supra,* this court affirmed the conviction of two defendants of party to the crime of robbery, where it was clear that neither defendant took the victim's wallet, but both participated in a vicious assault upon him. "Such an assault can be part of and an aggravation of the crime of robbery. A physical assault, such as described in the evidence herein, is not only a heinous crime itself but can be a part of a planned robbery in that it renders the victim either incapable or too fearful to resist." *Bautista v. State,* 53 Wis.2d at 224. Viewing the evidence in the light most favorable to the jury's finding, *Id.* at 223, we conclude that the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt.

The defendant also argues that it was prejudicial error to admit two photographs of Nauertz into evidence and to allow them to go to the jury room. Both of the photographs show the injuries to Nauertz's face and head. Defendant contends that the photographs are of no probative value and are of such a character as to evoke a

sympathetic reaction toward the victim and hostility toward the defendant.

At trial there was no objection to the photographs based on this contention. Instead, the defendant objected to the photographs but on the ground that the identification requirements of sec. 270.202, Stats. 1973, had not been met. Defendant's objection was overruled, and the trial court's ruling was not asserted as error, either in the motion for new trial or on this review. By failing to assert this claim in a motion for a new trial, the defendant has relinquished his right to have this claimed ground of inadmissibility examined by this court. *Thiesen v. State,* 86 Wis.2d 562, 564, 273 N.W.2d 314 (1979). Nor may defendant employ the objection made on this ground to preserve the claim, asserted in a motion for new trial and on review, that the photographs should have been excluded because the dangers of unfair prejudice outweigh any probative value they may have. "[A] specific objection overruled will be effective only to the extent of the ground specified." *State v. Hoffman,* 240 Wis. 142, 152, 2 N.W.2d 707 (1942). Because no objection was made at trial that the photographs were unfairly prejudicial, this alleged error has been waived and cannot be raised in this court. *Holmes v. State,* 76 Wis.2d 259, 271–72, 251 N.W.2d 56 (1977) ; *Sage v. State,* 87 Wis.2d 783, 790, 275 N.W.2d 705 (1979).

Finally, the defendant contends that he is entitled to a new trial in the interest of justice. He claims that "cumulative effect" of his first two allegations of error create a substantial likelihood that justice has miscarried. However, a new trial in the interest of justice will be granted only if it appears that there has been a miscarriage of justice and that a new trial under optimum conditions will produce a different result. *Moes v. State,*

91 Wis.2d 756, 772, 284 N.W.2d 66 (1979). There is no indication that a new trial would be likely to produce a different result in this case or that justice has not been served.

*By the Court.*—Judgment and order affirmed.

COFFEY, J., took no part.