STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Carl STANFIELD, d/b/a Canine College, Ltd., Defendant-Appellant.†

Supreme Court

*No. 80–2066–CR. Argued December 1, 1981.— Decided January 18, 1982.*

(Also reported in 314 N.W.2d 339.)

† Motion for reconsideration denied, without costs, on February 26, 1982.

554

For the plaintiff-petitioner the cause was argued by *Jonathan P. Siner,* assistant attorney general, with whom on the brief (in this court) was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief (in court of appeals) and oral argument by *Roland J. Steinle, Jr.*, of Cedarburg.

DAY, J. There are two issues presented on this review. First, is intent or negligence an element of the crime of mistreating animals, sec. 948.02,[1] Stats. 1975. Second, was sufficient evidence presented to convict defendant-appellant Carl A. Stanfield, (Stanfield) of being party to the crime of mistreating animals, set forth in secs. 939.05[2] and 948.02, Stats. 1975. We hold that sec. 948.02 does not require proof of intent or negligence and that there is sufficient evidence in the record to sustain the jury verdict convicting Stanfield. We therefore reverse the decision of the court of appeals and reinstate the judgment of the trial court.

In November, 1976, Stanfield was charged with seven counts of being a party to the crime of mistreating animals. Following an eleven-day jury trial in Milwaukee county court, he was found guilty on three counts and not guilty on the other four. The following evidence was presented at that trial.

---

[1] "948.02 **Mistreating animals.** No person may treat any animal, whether belonging to himself or another, in a cruel manner. This section does not prohibit bona fide experiments carried on for scientific research or normal and accepted veterinary practices."

[2] "939.05. **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; . . ."

Stanfield testified as follows: He was the owner and operator of Canine College. He has used that tradename since the early 1960's operating as a sole trader until 1976, when he incorporated the dog-training business as Canine College, Ltd., of which he was the principal owner. He conducted dog obedience classes and trained individual dogs at the homes of their owners. He also contracted with persons to individually train dogs away from the owner's home. He would arrange to have the dogs picked up and delivered to persons with whom he had made contractual arrangements to train the dogs.

Stanfield further testified that one of the places with which he had contracted to train dogs was Pleasant Run Farms, near Fond du Lac, a kennel operated by Don Woods and Debbie Ullman. Stanfield provided food and supplies to Pleasant Run Farms and would send dogs to be trained. Woods and Ullman would train the dogs and were given the right to use the name Canine College. Stanfield would also help Woods and Ullman sell dogs which they had.

Stanfield testified that he used a method of training which involved a spiked collar and a short piece of chain which the handler rattled or threw at the dog to get its attention. He also used a stick with a piece of chain attached which he would throw at the dog if it were not responding properly. Persons with whom he contracted to train dogs under the auspices of Canine College also used this method. Other persons testified that, when training their dogs, Stanfield would strike the dogs with the stick and advised others to do so. There was also testimony that Stanfield possessed and advocated the use of an electric cattle prod to shock dogs if the above methods did not work.

The three counts which Stanfield was convicted of involved mistreatment of dogs belonging to Karen Nimmer, Marie Van Wormer and William Towne. It was stipu-

lated that the Towne and Nimmer dogs were picked up from and returned to their owners by agents of Canine College pursuant to a contract between the owner and Canine College. Testimony established that this was also true concerning the Van Wormer dog. None of the owners were told where their dogs would be trained.

Ms. Nimmer testified that her dog, a Doberman Pinscher puppy, was in good shape, was housebroken, and had a pleasant disposition when she contacted Canine College. At that time it was gaining an average of four pounds a week. She talked to Stanfield twice while her dog was being trained and Stanfield informed her that the dog was doing fine but was not eating properly. When the dog was returned, it was thin, had pimples all over its body, was limping, the hair around its nose had worn off, it had diarrhea and acted dejected and frightened. The dog had gained no weight during its stay at Canine College and was no longer housebroken. She took the dog to the veterinarian several times within a short period of time following its return from Canine College to treat the maladies from which her dog was suffering when it was returned to her. She also stopped payment on her check to Stanfield and called him to express her shock at the condition of her dog.

Ms. Van Wormer testified that her dog, a Great Dane puppy, was friendly, docile, and got along well with small animals and children. She contacted Canine College and arranged to have the dog trained. While her dog was at Canine College, she spoke with Stanfield on the phone five times. Stanfield told her that the dog did not adapt well to male trainers, had not been eating right and had rubbed fur off of its back since it was too large to get through the door of the kennel run. When Stanfield returned the dog, he would not let Ms. Van Wormer see her dog until she had paid him. The

dog had lost thirty pounds, had a large lump behind its ear and raw spots on its back, legs and tail and acted frightened and confused. The dog never regained its former personality and became mean and irritable, prompting Ms. Van Wormer to give him away shortly thereafter.

Mr. Towne testified that his dog, a Doberman, was healthy, playful and friendly with children. He contacted Stanfield to have the dog trained. He spoke with Stanfield once or twice while the dog was away being trained and Stanfield assured him that the dog was doing well. When the dog was returned, after four weeks training, it had scratches on the inside of its legs, scabs inside of its ears, its feet were bleeding and it was excreting a malodorous sticky substance from its mouth. Because of this excretion, and the dog's overall listlessness after it returned, Mr. Towne took the dog to a veterinarian and it eventually regained its health.

Upon his conviction, Stanfield was placed on two years probation with the first thirty days to be served in the county jail. He was ordered to pay a $600 fine, make full restitution to the three owners whose dogs he was convicted of mistreating, pay all the costs of the action, and perform seventy-five hours of community service work.[3]

Stanfield appealed his conviction to the Milwaukee county circuit court, which upheld the trial court verdict and sentence. He then appealed to the court of appeals which reversed the conviction and remanded the case to the trial court with orders to dismiss the complaint. The court of appeals held sec. 948.02, Stats., to require proof of intentional or negligent cruelty to ani-

---

[3] Stanfield was sentenced under sec. 948.18, Stats. 1975, which reads:

"948.18 **Penalties.** (1) Any person violating s. 948.02, 948.03, 948.05, 948.06, 948.07, 948.08, 948.09, 948.13, 948.14 or 948.15(1) may be fined not more than $500 or imprisoned not more than one year in the county jail or both."

mals, and found insufficient evidence to sustain the state's burden of proof. The court of appeals noted that the evidence was sufficient to convict under the current statute,[4] stating:

"Although the evidence would clearly justify a strict liability finding sufficient to impose a forfeiture under the present law, at the time the occurrences involved in this case the penalty imposed brought the crime within the definition of a misdemeanor and required proof of scienter."

This court granted the state's petition to review the court of appeals decision, and because we construe sec. 948.02, Stats. 1975, as not requiring proof of intent or negligence, we reverse.

Our first concern is determining the elements necessary to a conviction of being party to the crime of mistreating animals. Cruelty to animals is a particularly despicable offense because of the relative helplessness of animals when faced with inhumane humans willing or even anxious to mistreat them.

Pursuant to sec. 939.05, Stats., a person may be convicted of a crime if he directly commits it or intentionally aids and abets its commission. Section 948.02, Stats. 1975, makes it illegal for a person to "treat any animal, whether belonging to himself or another, in a cruel manner." "Cruel" is defined by sec. 948.02, Stats. 1975, as "causing unnecessary and excessive pain or suffering or unjustifiable injury or death."[5]

---

[4] Subsequent to the commencement of this action, the penalties for a conviction under the crimes against animals statutes were revised. Under the current law, a person convicted under sec. 948.02, Stats., which remains unchanged, is subject to a $200. forfeiture unless it was found that he did so negligently or with intent, in which case he was subject to a nine month prison sentence and a $10,000. fine. *See, secs.* 948.18(1), 939.51 and 939.52, Stats. 1979–80.

[5] "948.01 **Definitions.** In this chapter: . . .

"(2) 'Cruel' means causing unnecessary and excessive pain or suffering or unjustifiable injury or death."

The court of appeals held that negligence or criminal intent is an element of sec. 948.02, Stats. It based this conclusion on *State v. Collova,* 79 Wis. 2d 473, 255 N.W. 2d 581 (1977), wherein this court interpreted the crime of driving after one's drivers license was revoked as requiring proof of intent despite the fact that the applicable statute did not mention criminal intent. However, *Collova* is not applicable to this case.

*Collova* interpreted a provision of the vehicle code. The crime of mistreating animals is part of the criminal code. Section 939.23, Stats. 1975, contains guidelines as to whether criminal intent is an element of an offense set forth in the criminal code.

"939.23 **Criminal intent.** (1) When criminal intent is an element of a crime in the criminal code, such intent is indicated by the term 'intentionally,' the phrase, 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.' "

In *Collova,* this court recognized the validity of sec. 939.23, but held it inapplicable to that case because the statute at issue was part of the vehicle, rather than the criminal code.[6]

Section 948.02, Stats., contains none of the words which sec. 939.23 sets forth as indicative of the element of intent. The predecessor to sec. 948.02, sec. 947.10(1) (a), Stats. 1971, explicitly required proof of intent.[7]

Section 948.02 was created by ch. 314, sec. 6, Laws of 1973. Senate Bill 16 which became ch. 314, contained

---

[6] *Collova, supra,* 79 Wis. 2d at 480, n. 2.

[7] "947.10 **Cruelty to animals.** (1) Whoever does any of the following may be fined not more than $500 or imprisoned not more than one year in county jail or both: . . ."

"(a) *Intentionally* tortures any animal, or without justification kills any domestic animal of another without the owner's consent; . . . (emphasis added).

the following Legislative Council note pertaining to sec. 948.02:[8]

"**Note:** This general anticruelty statute is a restatement of present s. 947.10(1)(a); however, the intent of the wrongdoer is no longer a controlling factor. Specific exception is provided for bona fide experiments and accepted veterinary practices."

The comments of legislative advisory committees are relevant to the construction of a statute. *Champlin v. State*, 84 Wis. 2d 621, 625, 267 N.W.2d 295 (1978).

From the foregoing, we conclude that the legislature did not intend to require intent or negligence as an element of the crime of mistreating animals set forth in sec. 948.02, Stats.[9] Nor does the fact that conviction under sec. 948.02 carries a potential prison sentence require that we read those elements into the offense.[10]

Because Stanfield was convicted of being a party to the crime of mistreating animals, there must be sufficient evidence presented to fulfill the requirements of

---

[8] This note is also appended to sec. 948.02, Stats. 1979–80.

[9] The indicia of a legislative intent to remove criminal intent as an element of sec. 948.02, Stats., distinguishes this case from *State v. Alfonsi*, 33 Wis. 2d 469, 147 N.W.2d 550 (1967), in which this court was persuaded by legislative history, including the text of successive statutes on the same subject and committee reports, that criminal intent was an element of the crime of bribery of a public officer as defined by sec. 946.10(2), Stats. 1965. *Alfonsi, supra*, 33 Wis. 2d at 475–476. While legislative history persuaded this court to hold that intent must be proved in *Alfonsi*, those same aids to construction require that we not read an element of intent into sec. 948.02.

[10] This court has upheld strict liability statutes containing far more severe penalties than that at issue here. *See, Redepenning v. State*, 60 Wis. 2d 471, 480–481, 210 N.W.2d 673 (1973) (rape: 30 year maximum prison sentence); *Flowers v. State*, 43 Wis. 2d 352, 359–360, 168 N.W.2d 843 (1969) (indecent behavior with a child: 10 year maximum prison sentence).

sec. 939.05, Stats., that he either directly mistreated or aided and abetted another in mistreating animals. The jury was instructed, in accordance with Wis JI—Criminal No. 400, that Stanfield could be convicted of being a party to the crime of mistreating animals if he directly mistreated the animals, or if he intentionally aided and abetted such mistreatment. The jury was not required to state whether the conviction was for direct commission of the crime or intentionally aiding and abetting. In *State v. May*, 97 Wis. 2d 175, 189–192, 293 N.W. 2d 478 (1980), this court specifically held that the party to a crime instruction which permitted the jury to choose among alternative ways by which a defendant could be a party to a crime was permissible.

In *State v. Ehlenfeldt*, 94 Wis. 2d 347, 359, 288 N.W. 2d 786 (1980), this court stated the standard of proof which must be met to satisfy the "intentionally aids and abets" language of sec. 939.05:

". . . [A]lthough intent does not appear to be an element of the substantive offense involved here, it is an element of the specific crimes with which Ehlenfeldt has been charged by virtue of sec. 939.05, Stats., the general party to a crime statute. Ehlenfeldt was charged and convicted of intentionally aiding and abetting Dan's Country Boy Market in the violation of sec. 95.28(1). In *Hawpetoss v. State*, 52 Wis. 2d 71, 78, 187 N.W.2d 823 (1971), we stated:

" 'The elements of complicity, or aiding and abetting are that a person (1) undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance.'

"It clearly follows from the above that Ehlenfeldt's conviction can only be sustained if he was shown to have intentionally undertaken conduct which as a matter of objective fact aided Dan's Country Boy Market in violating sec. 95.28(1), Stats."

*See also, Robinson v. State,* 100 Wis. 2d 152, 167, 301 N.W.2d 429 (1981).

Whether a defendant possesses a particular intent is to be determined by the jury upon consideration of "the totality of the circumstances." While the defendant's testimony is relevant to this determination, his credibility and trustworthiness are for the jury to determine. *Clark v. State,* 92 Wis. 2d 617, 635, 286 N.W.2d 344 (1979). Direct testimony as to a defendant's subjective intent is not necessary, as this court stated in *Ehlenfeldt, supra:*

"Although intent is usually not susceptible of direct proof, it may often be inferred from a person's voluntary acts because of the almost self-evident principle of human conduct that people normally intend the natural and probable consequences of their acts." *Ehlenfeldt, supra,* 94 Wis. 2d at 361.

We, therefore, hold that in order to sustain a conviction of intentionally aiding and abetting the crime of mistreating animals, there must be evidence presented sufficient to prove beyond a reasonable doubt that Stanfield knew that animals were being mistreated and engaged in conduct, the natural and probable consequence of which, as a matter of objective fact, aided another in such mistreatment.

In reviewing the record to determine whether sufficient evidence was presented to warrant a conviction, we apply the following standard of review, as set forth in *State v. Burkman,* 96 Wis. 2d 630, 643, 292 N.W.2d 641 (1980):

"When the defendant challenges the sufficiency of the evidence, the test is whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable

doubt. The test is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt, but whether this court can conclude that the trier of fact could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. Reversal is only required when the evidence considered most favorably to the state and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " (citations omitted).

A conviction may be based upon circumstantial evidence, however when circumstantial evidence is relied upon, as here, a conviction should be upheld if the evidence is strong enough to exclude to a moral certainty every reasonable hypothesis of innocence. *Frankovis v. State*, 94 Wis. 2d 141, 148, 287 N.W.2d 791 (1980).

After reviewing the record, we conclude that the evidence presented, construed most favorably to the state, was sufficient to convince a reasonable trier of fact beyond a reasonable doubt that Stanfield had been a party to the crime of mistreating animals.

The persons who trained the dogs had been instructed how to do so by Stanfield. The methods and devices advocated and used by Stanfield can easily cross over the line and become the means of animal abuse as the jury had the right to conclude from the physical condition of the dogs at the time they were returned to their owners. The owners of the dogs that Stanfield was convicted of mistreating spoke with Stanfield on the phone while the dogs were being trained. In those conversations, Stanfield described the dogs' condition and how the training was proceeding. Stanfield personally returned Ms. Van Wormer's dog to her. Stanfield was the person with whom all of the owners contracted to have their dogs trained, and Stanfield arranged with them for the dogs to be picked up and returned.

The condition of the dogs when they were returned after training would support a jury finding that they had been mistreated while being trained. The evidence of the telephone calls by the dog's owners to Stanfield, in which Stanfield gave them information evidencing an awareness of the dog's condition and training could convince a reasonable jury that Stanfield knew how the dogs were being treated during their training and, *a fortiori*, knew that they were being mistreated. The evidence that Stanfield arranged to pick up the dogs and return them to their owners, coupled with Stanfield's presence when Ms. Van Wormer's dog was returned to her and his conversations with Ms. Nimmer in which she expressed her distress over her dog's condition upon its return, would support a finding that he took actions which, as a matter of objective fact, aided others in mistreating animals and consciously intended to provide such assistance.

We conclude that the above evidence, when viewed most favorably to the state, was sufficient to convince a reasonable jury beyond a reasonable doubt that Carl Stanfield was guilty of being a party to the crime of mistreating animals.

*By the Court.*—The decision of the Court of Appeals is reversed and the judgment of the trial court is reinstated.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I dissent for two reasons: First, I would dismiss the petition to review as having been improvidently granted. Second, I disagree with the result reached by the majority; I would affirm the decision of the court of appeals.

*Petition Improvidently Granted.* As the majority states, this case raises two issues on review: (1) Does sec. 948.02, Stats. 1975, require the state to prove

intent as an element of the crime of treating an animal in a cruel manner?[1] (2) Was sufficient evidence presented for the jury to find the defendant guilty beyond a reasonable doubt of intentionally aiding and abetting the commission of the crime of treating an animal in a cruel manner. Sec. 939.05, Stats. 1975.[2]

Neither issue should be reviewed by this court.

As to the first issue on review, that of statutory interpretation, the majority acknowledges, *supra* at 559, n. 4, that the 1975 law has been amended and that the new statute does not pose the question of scienter which is raised under the 1975 law. The state concedes that there are no other prosecutions pending under the 1975 statute. Consequently, this court's decision on the meaning of the 1975 statute has no precedential or long-term value; it affects only this case. And as shall be clearer from the discussion to follow the court's decision on

---

[1] "948.02 **Mistreating animals.** No person may treat any animal, whether belonging to himself or another, in a cruel manner. This section does not prohibit bona fide experiments carried on for scientific research or normal and accepted veterinary practices."

"948.01 **Definitions.** In this chapter:

". . .

"(2) 'Cruel' means causing unnecessary and excessive pain or suffering or unjustifiable injury or death."

[2] Sec. 939.05, Stats. 1975, provides as follows:

"939.05 **Parties to crime** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it. . . ."

whether the 1975 statute requires proof of scienter is not relevant to deciding the case at bar. The issue of scienter presented in this review is not whether the person who trained the dog *intentionally mistreated* it but whether the defendant in this case *intentionally aided* and abetted the crime.

As to the second issue on review, sufficiency of the evidence, this court has said that it does not ordinarily take a case on review which involves only the question of sufficiency of the evidence; and if the issue of sufficiency is involved in a review, we ordinarily defer to the decision of the court of appeals on this issue and do not re-review the sufficiency of the evidence. *Winkie, Inc. v. Heritage Bank,* 99 Wis. 2d 616, 621–22, 299 N.W. 2d 829 (1981).

Accordingly I conclude that this case does not fit any of our published criteria for granting review. 85 Wis. 2d xiii (1978).

"The purpose of successive review by a higher appellate court is principally that of resolving questions of law of general significance." American Bar Association Commission on Standards of Judicial Administration, Standards Relating to Appellate Courts, Standard 3.10, pp. 15–16 (1977). See also, Leflar, *Internal Operating Procedures of Appellate Courts,* 74–78 (1976). For the vast majority of cases in this state the court of appeals is the court of last resort. To allow the court of appeals and this court to perform their respective functions well, we must resist the temptation to review decisions of the court of appeals any time three members of this court tentatively decide that their review would produce an answer different from the one reached by the court of appeals.

Justice Stevens of the United States Supreme Court expressed the same concern about that Court's granting of certiorari to review decisions of the federal court of appeals as follows:

"[The courts of appeals] are in truth the courts of last resort for almost all federal litigation. Like other courts of last resort—including this one—they occasionally render decisions that will not withstand the test of time. No judicial system is perfect and no appellate structure can entirely eliminate judicial error. Most certainly, this Court does not sit primarily to correct what we perceive to be mistakes committed by other tribunals. Although our work is often accorded special respect because of its finality, we possess no judicial monopoly on either finality or respect. The quality of the work done by the Courts of Appeals merits the esteem of the entire Nation, but, unfortunately, is not nearly as well or as widely recognized as it should be. Indeed, I believe that if we accorded those dedicated appellate judges the deference that their work merits, we would be better able to resist the temptation to grant certiorari for no reason other than a tentative prediction that our review of a case may produce an answer different from theirs. In my opinion, that is not a sufficient reason for granting certiorari. Because no other reason for reviewing this case is apparent, a simple denial of certiorari would have been an appropriate and efficient disposition." (Footnotes omitted.) *Watts v. Alaska,* 451 U.S. 259, 101 S. Ct. 1673, 1682–83 (1981) (Stevens, J. concurring opinion).

Because the question of law (the statutory construction issue) has already been answered by the legislature and is not directly relevant in the case at bar and because the sufficiency of the evidence issue does not justify this court reviewing the decision of the court of appeals, I would dismiss the petition as having been improvidently granted.

*Sufficiency of the Evidence.* The second issue posed on review is whether the evidence is sufficient to sustain the jury verdict that the defendant was a party to a crime. There are three alternative ways of being a party to the crime, *i.e.* by directly committing the crime, by aiding and abetting the commission of the crime, or by being a party to a conspiracy to commit the crime.

There is no evidence in the record that the defendant directly committed the crime or that he was a party to a conspiracy to commit the crime. Therefore, the only possible basis for conviction is that the defendant intentionally aided and abetted the commission of the crime.

To prove that the defendant intentionally aided and abetted the commission of the crime, the state must prove the following two elements:

(1) That the defendant undertakes conduct which as a matter of objective fact aids the execution of a crime; and

(2) That the defendant undertakes such conduct with the knowledge or belief that another person is committing or intends to commit a crime. *Supra* at 562.

The jury was properly instructed pursuant to Wis. JI —Criminal No. 400 (1962) as to these two elements as follows:

"A person intentionally aids and abets the commission of a crime when, *acting with knowledge or belief that another person is committing or intends to commit a crime, he knowingly* either

"(a) renders aid to the person who commits the crime, or

"(b) is ready and willing to render aid if needed, and the person who commits the crime knows of his willingness to aid him. However, a person does not aid and abet if he is only a bystander or spectator, innocent of any unlawful intent, and does nothing to assist or encourage in the commission of the crime. If a person intentionally aids and abets the commission of a crime, then that person is guilty of the crime as well as the person who directly committed it." (Emphasis added.) R. 50–5.

If the animals were treated in a cruel manner, the state has proved beyond a reasonable doubt the first element of intentionally aiding and abetting, namely that the defendant engaged in acts which as a matter of ob-

jective fact aided the execution of the crime. The defendant contracted for the training; he instructed employees to pick up and return the dogs for purposes of training; and he received payment for the training.

It is the second element of intentionally aiding and abetting—the knowledge that another person is committing a crime—referred to as scienter (the mental element), that should be the focus of this court's review of the sufficiency of the evidence.

Although the 1975 crime of treating animals in a cruel manner is a strict liability crime and no proof of scienter is required in order to convict the person directly committing the crime, in this case the state must prove the scienter which is an element of the party to a crime statute. In other words, the state must prove that the defendant intentionally aided and abetted the commission of the strict liability crime.

Strict liability is not the same as vicarious liability. LaFave & Scott, *Criminal Law* sec. 32 (1972). The 1975 statute in issue does not make the defendant, here the principal shareholder of the corporation, criminally liable for the conduct of persons working with or for him. In civil law we are accustomed to the concept of vicarious liability, generally referred to as the doctrine of respondeat superior. In criminal law, however, there is generally no vicarious liability unless the statute imposes liability on the principal for the conduct of his agent. See, *e.g.*, a statute which punishes "whoever by himself or his agent sells, transfers, [etc.] . . . ."

The 1975 law in the case at bar has not been interpreted by this court as a vicarious liability law, and the jury was not instructed on vicarious liability. The defendant thus cannot be held liable criminally on the doctrine of vicarious liability for the acts of employees. See Wis. JI—Criminal Nos. 435, 440 (1966), and comments re vicarious liability; Abrams, *Criminal Liability of Corporate Officers for Strict Liability Offenses—A Comment on Dotterweich and Park,* 28 U.C.L.A. L. Rev. 463 (1981).

If the defendant in the case at bar is to be convicted, the state must prove that he is a party to this strict liability crime. Thus the state had to prove that the defendant had "knowledge or belief that another person is committing or intends to commit a crime." See *State v. Ehlenfeldt, supra,* p. 562; jury instruction on intentionally aiding and abetting, p. 569, *supra.*

The majority and I agree that there is no direct evidence that the defendant knew or believed that the three dogs involved in the offenses for which the defendant was convicted were being treated in a cruel manner. The defendant testified he had been to the kennels where the dogs were trained only once in three years. Even if the jury disbelieved the defendant, there is no proof that the defendant saw the animals in question being trained or knew that the trainers had crossed the line from training to abuse (if in fact they had crossed the line).

Thus, as the majority recognizes, *supra* p. 564, if defendant's knowledge is to be proved, it must be by circumstantial evidence. When circumstantial evidence is relied on, it must be sufficiently strong to exclude to a moral certainty every reasonable hypothesis of innocence. This court has explained the proper use of circumstantial evidence by a jury as follows:

"[W]hen circumstantial evidence is relied upon, this evidence must be sufficiently strong to exclude every reasonable hypothesis of innocence. This does not mean that, if *any* of the evidence brought forth at trial suggests innocence, the jury cannot find the defendant guilty. The function of the jury is to decide which evidence is credible and which is not, and how conflicts in the evidence are to be resolved. The jury can thus, within the bounds of reason, reject testimony suggestive of innocence. The rule that the circumstantial evidence must exclude every reasonable theory of innocence refers to the evidence which the jury could have believed and relied upon to support its verdict." (Footnotes omitted.) *Peters v. State,* 70 Wis. 2d 22, 34, 233 N.W.2d 420 (1975).

I conclude, as did Judge Decker writing for the court of appeals, that the "voluminous record of this case . . . is devoid of direct or circumstantial evidence from which a trier of fact could reasonably conclude that Stanfield . . . intentionally aided and abetted mistreatment of the animals in question." (Ct. of App. unpublished decision, p. 4).

The majority says the jury could infer that the defendant knew the trainers had treated the dogs in a cruel manner from the condition of the dogs when they were returned to the owners and from the testimony of the three owners that Stanfield discussed their dogs' training and condition with them over the telephone. *Supra* at 565.

The evidence showed that the defendant personally saw only one dog of the three dogs involved in the offenses for which he was convicted. This dog was a seven- to eight-month-old Great Dane which the defendant personally returned to the owner after the five-weeks' training session ended. The owner testified as follows: The dog was wearing a nylon muzzle; it was "thin in comparison to when it went in." The dog was clean. The dog had sores on his back, on the elbows of his legs and on the tip of his tail. The owner testified the defendant explained to her, as he had several weeks previously over the telephone, that the dog (which was very large) had rubbed the fur off his back getting in and out of his quarters. The owner testified the defendant told her the dog's tail was injured because the dog wagged the tail so hard that it cracked it open. The owner further testified the dog had strain sores at the mouth area "that he had evidently gotten fighting the muzzle." The owner also testified that the dog was scared, excited and confused when he was brought into the house. The owner said she did not purchase the muzzle from the defendant but did purchase the spiked training collar (which she described as "the normal training collar . . . . It's procedure.") The owner also testified that

after the defendant left the house and after the owner petted the dog awhile she noticed a "big lump [the size of which was not described] behind the ear." The owner commented, "How he got it, I have no idea." Four weeks after the dog was returned home, the dog had urinary problems. The owner also described the deterioration of the dog's personality in the three to four months after the dog returned home.

The other two dogs, whom the defendant had not seen, were described as thin, having a rash (diagnosed by one of the state's witnesses as a staph infection), sore paws, worn-down hair around the nose, one-quarter to one-half inch bumps (not open sores) around the neck and shoulders.

It is possible that the condition of the dogs resulted from cruel treatment. It is also reasonable to infer that these conditions can occur in the absence of cruel treatment in dogs kept at home or at a kennel. The jury could not conclude beyond a reasonable doubt that when the defendant saw a dog in this condition or knew of this condition, the defendant knew (actual knowledge is required, it is not sufficient that the defendant had reason to know, *i.e.* was negligent if he did not know) that the dogs had been treated in a cruel manner.

When an owner called the Canine College, the owner generally left a message asking that the call be returned. Either the defendant or an employee returned the owner's call and gave the owner a general status report on the dog. It is possible that the defendant reported on the dogs on the basis of his personal observation of the dogs. It is also reasonable to infer that the defendant's reports were not based on personal observation of the dogs, but on reports he received from others. Thus, even if the jury chose not to believe the defendant's testimony that he never saw the dogs being trained, there

was no evidence in the record from which the jury could infer beyond a reasonable doubt that the defendant *knew* that the dogs were being treated in a cruel manner. *Stewart v. State*, 83 Wis. 2d 185, 193, 265 N.W.2d 489 (1978). The state has not met its burden of proof.

The testimony might lead the jury to believe, beyond a reasonable doubt, that the defendant was negligent and liable for damages in not checking on the employees or that the defendant was negligent in not checking on the training and the care of the dogs or that the defendant should be held vicariously liable for the acts of other persons. But the circumstantial evidence adduced, believed and rationally considered by the jury does not exclude to a moral certainty every reasonable hypothesis of innocence, *supra* p. 564, and is not sufficient to enable the jury, acting reasonably, to be convinced beyond a reasonable doubt that the defendant knew that the dogs were being treated in a cruel manner.

The majority has reviewed the record and has reached the opposite conclusion. If the fact that the court of appeals and I view the record one way and the majority the other makes the question a close one, it only reinforces my opposition to this court's review of the sufficiency of evidence. The message we send today to the defendant, counsel, the courts and the public is that if appeal from this court were possible, the outcome in the next appellate court might be different. In Wisconsin there is one appellate review of right. That review was by the court of appeals; a second review of the sufficiency of the evidence should not be undertaken.

I fully agree with the majority that "cruelty to animals is a particularly despicable offense." *Supra* at 559. But when cruelty to animals is made a criminal offense, as it should be, the courts cannot allow the "despicable" nature of the offense to reduce the state's burden of

proof. In every case criminal guilt must be established beyond a reasonable doubt.

For the reasons set forth, I would dismiss the petition for review as having been improvidently granted.

I am authorized to state that Chief Justice Bruce F. Beilfuss joins this dissenting opinion.